Todd M. Friedman, Esq.- State Bar #216752
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com
Phone: (323) 306-4234
Fax: (866) 633-0228

Gregory F. Coleman*
greg@gregcolemanlaw.com
Adam A. Edwards*
adam@gregcolemanlaw.com
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

*Attorneys for Plaintiffs*
*pro hac vice* applications to follow

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ELKINS and LAURA ELKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., a California Corporation, and HONDA NORTH AMERICA, INC., a California Corporation,<br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Demand for Jury Trial)** |

Plaintiffs David and Laura Elkins ("Plaintiffs"), acting individually and on behalf of all others similarly situated, bring this action for damages and equitable relief against Defendants American Honda Motor Co., Inc. ("AHM") and Honda North America, Inc. ("HNA") (collectively "Honda" or "Defendants").

# I. INTRODUCTION

1.     Between 2016 and the present, Plaintiff and the Plaintiff Class (as defined below) purchased or leased the Class Vehicles, defined as: 2015 – 2019 Honda Civic vehicles (hereinafter "Class Vehicles").

2.     One of the most popular basic standard features found in virtually every car in the United States is the air conditioner.  However, from the date of their manufacture and before they are put into the stream of commerce, the air conditioning in the Class Vehicles has a common defect. Specifically, as described further herein, the design, location, and materials used to manufacture the condenser cannot withstand ordinary and expected driving conditions ("Condenser Defect").

3.     Automotive air conditioning works by a heat transfer from the air in the vehicle to a gas in the vehicle's air conditioning system providing cool air to the occupants.  It transfers heat by compressing refrigerant gas into a high-pressure state. The refrigerant then travels through high-pressure lines to a condenser where the gas is transitioned into a liquid.  The condenser, similar to a small radiator, facilitates a heat transfer from the refrigerant to fresh air on the outside of the vehicle, which absorbs the heat from the refrigerant.  The outside air cools the liquid gas which is then passed through a dryer filled with a desiccant.  This process removes excess moisture from the refrigerant serving a similar purpose as a dehumidifier. The refrigerant is then transformed back to a gas and travels through an evaporator in the passenger compartment of the vehicle.  The evaporator allows the refrigerant to absorb the heat from the interior of the vehicle leaving behind cooler air.  This cool air is then circulated in the vehicle by fans.

4.     The condensers, present in the Class Vehicles, are integral to the performance of the air conditioner as it is the primary method of dissipating the heat absorbed by the refrigerant gas in the evaporator.  Simply put, if the condenser is not intact in a closed system, gas will escape, heat will not transfer and the Class Vehicle's air conditioning will not function properly, if at all.



5.     Failure of a vehicle's air conditioning system is a significant safety hazard when a vehicle's windshield accumulates moisture.  The fastest way to remove this excess moisture and stop water condensation on the windshield is to rapidly lower the inside temperature of the vehicle.  This is not always possible without a working air conditioner.

6.     Moreover, a refrigerant leak in a vehicle's air conditioning system presents risks for damage to other expensive components within the system.  For example, the refrigerant carries oil along the system.

7.     This oil lubricates the moving parts in the systems compressor. System leaks allow the escape of both the refrigerant and the oil which can lead to a failure in the system's compressor.

8.     The Class Vehicles identified above were negligently designed and/or manufactured by Honda in that the condenser is placed in a position on the vehicles that is vulnerable to contact from rocks, pebbles and other road debris during normal driving conditions on paved roadways.  Despite the clear vulnerability of the condenser to contact, Honda has failed to design the Class Vehicles in a manner that would provide protection to the condenser, such as a guard or grill.

9.   The Class Vehicles were also negligently designed and/or manufactured by Honda in that the condenser is manufactured out of materials that cannot withstand the force of even minor impacts from rocks, pebbles and other small road debris that all vehicles encounter during normal driving conditions. As a result, the condensers are easily damaged causing the air conditioning system to malfunction, which results in expensive repairs that Honda refuses to cover under warranty.

10.   If the Plaintiff and the members of the Plaintiff Class had known about the Condenser Defect at the time of sale or lease, Plaintiffs would have not purchased or leased the Class Vehicles, or would have demanded that the price or cost be reduced. They did not receive the benefit of their bargain.

11.   The Class Vehicles containing the Condenser Defect violate accepted engineering and/or automobile industry principles, standards, and guidelines.

## II.  PARTIES

12.   Plaintiffs David and Laura Elkins are citizens and residents of Irvine (Orange County), California. Plaintiffs purchased a brand new 2016 Honda Civic EX-T from Honda of Thousand Oaks, located in Thousand Oaks, California on April 3, 2016.

13.   Defendant American Honda Motor Co., Inc. ("AHM") is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California. AHM operates, maintains offices, and/or conducts business in all fifty states.

14.   Defendant Honda North America, Inc. ("HNA") is a California corporation with its principal place of business in Torrance, California.

15.   Defendants (collectively referred to as "Honda") are the developers, designers, manufacturers, assemblers, testers, inspectors, marketers, advertisers, distributors, sellers, and/or warrantors of the Class Vehicles.

16.    The division of liability, jointly or severally or both, among Defendants AHM and HNA requires discovery of facts known only to Defendants.

### III.  JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act because there is minimal diversity, the proposed Class and Subclasses each exceed one hundred members, and the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs.  28 U.S.C. § 1332(d)(2)(A).

18.    This Court can exercise personal jurisdiction over Defendants because both Defendants are incorporated in California and headquartered in Torrance, California.  Defendants' actions summarized in this Complaint occurred in this District so as to subject them to *in personam* jurisdiction in this District.

19.    This Court can exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

20.    Venue is proper in this District under 28 U.S.C. § 1391(a)-(c). Defendants are registered to and do conduct substantial business in the State of California, within this District, and otherwise maintain requisite minimum contacts with the State of California.  Additionally, Defendants distribute Class Vehicles in this District and receive substantial compensation and profits from the sale and lease of Class Vehicles in this District.

### IV.  FACTUAL ALLEGATIONS
#### <u>Plaintiffs David and Laura Elkins</u>

21.    Plaintiffs David and Laura Elkins were shopping for a reliable and safe car to serve as a household vehicle.  As a result of their research, on April 3, 2016, they purchased a 2016 Honda Civic EX-T four door sedan from Honda of Thousand Oaks (an authorized Honda dealership) located in Thousand Oaks, California. Plaintiffs vehicle had a 1.5 L 4-cylinder engine.  Plaintiffs David and Laura Elkins paid $23,781.96 for the 2016 Civic.

22.     At the time of Plaintiffs purchase, Honda knew that its Civic condensers had the Defect, but did not disclose this defect to Plaintiffs.  Plaintiffs David and Laura Elkins purchased—then operated—the vehicle on the reasonable but incorrect belief that their Class Vehicle's air conditioning system would operate properly as warranted.

23.     In April of 2018, the Elkins noticed that the air conditioning in their vehicle took an unusually long time to become cool and that it would never blow cold air.  In response, they presented their vehicle to the service department at Freeway Honda in Orange, California on April 26, 2018.

24.     Freeway Honda inspected the vehicle and could not reproduce the complaint and returned the vehicle to the Elkins telling them they could not identify an issue with the vehicle's air conditioning.

25.     The Elkins continued to drive the vehicle, but the air conditioning continued to take longer and longer to operate until, in July of 2018, the system completely stopped working and would only blow out hot air.

26.     According to statistics collected from the U.S. National Climatic Data Center, the average high temperature in Irvine, California during July 2018 was 89 degrees Fahrenheit,[1] the hottest temperatures on record in that area since 1895.[2]  At times, the temperature exceeded 100 degrees.

---

[1] *See* https://www.currentresults.com/Weather/California/city-temperature-july.php (last visited April 2, 2019).
[2] *See* https://www.ncdc.noaa.gov/temp-and-precip/us-maps/1/201807#us-maps-select (last visited April 2, 2019).



27.    During this record heat wave, David Elkins was still driving the Civic back and forth from work, but due to the air conditioning system's failure, the car was used as little as possible by the family. It became unbearable to drive the vehicle due to the heat and the non-functioning air conditioning.

28.    At the time Plaintiffs' vehicle's air conditioning stopped working, the Civic was still covered under Honda's 3 year/36,000 mile warranty. Believing this to be a warranty issue, Plaintiffs presented their vehicle to the service department of Freeway Honda in Orange, California for repair on or about July 11, 2018.

29.    Honda's warranty states: "Honda will repair or replace any part that is defective in material or workmanship under normal use . . . Air Conditioning System is covered for 3 years or 36,000 miles, whichever comes first."

30.    After an examination of the vehicle's air conditioner by a service technician at Freeway Honda, Plaintiffs were told that their condenser was damaged by road debris and that it was not covered under Honda's warranty.

31.    Finding this explanation unacceptable, Plaintiff Laura Elkins telephoned Honda's customer service department and explained the issue. She was told by the customer service representative that her vehicle's condenser was not

covered under the warranty because the damage was due to road debris.  Mrs. Elkins then asked to speak to a supervisor.

32.    A day later, a supervisor from American Honda returned Laura's call with the same explanation for Honda's refusal to cover the condenser repair under the warranty. Mrs. Elkins was advised to contact her auto insurance carrier. Honda analogized the condenser damage to a windshield being struck by a rock.

33.    Unsatisfied by American Honda's response, Mrs. Elkins once again reached out to Freeway Honda's service department in hopes of finding a satisfactory resolution to the issue.  Freeway informed her that they would provide a $500.00 discount to the repair, but they would require her to surrender the defective condenser.  Mrs. Elkins was unwilling to do so.

34.    Mrs. Elkins confirmed with American Honda that the discount was contingent on her surrendering her condenser. Needing the vehicle's air conditioning repaired and unwilling to part with the original condenser, Plaintiffs paid the full amount of the repair, $891.07, knowing that the risk of a repeated manifestation of the Condenser Defect was very high under ordinary use.

35.    Neither Honda nor any of its agents, dealers, or representatives informed Plaintiffs of the Condenser Defect prior to the purchase of their vehicle or after the vehicle's Defect manifested.

36.    Had Plaintiffs been advised of the Condenser Defect at or before the point of sale, they would not have purchased their Class Vehicle or would have paid less for the vehicle than they did.  They did not receive the benefit of their bargain.

### **Honda knew that the condenser was defective.**

37.    Since 2017, complaints to NHSTA, through its online reporting, and other online forums indicate that due to the Class Vehicles' design, Class Vehicle owners and lessees have experienced pre-mature air conditioning failure due to the defective design, materials selection, and manufacturing of the Class Vehicle's condenser units.

38.     Moreover, Honda has faced a prior class action lawsuit for the same or substantially similar defects found in its 2005 – 2007 Odyssey vehicles.  This action, styled *Alin v. Honda Motor Company, LTD. Et al*, No.: 2:08-cv-4825 (KSH)(PS), was filed in the District of New Jersey on September 25, 2008.

39.     Upon reasonable inspection and testing of the Class Vehicles and each of their components, Honda knew or should have known the Class Vehicles were prone to premature air conditioning system failure due to the Condenser Defect.

40.     Honda knew or should have known of the Condenser Defect, but failed to take reasonable corrective steps to prevent or cure the Defect.

41.     Honda had sufficient knowledge, expertise, availability, and resources to inspect the Class Vehicles for defects prior to placing them on the market.

42.     Honda had a duty to reasonably inspect the Class Vehicles for defects prior to placing them on the market.

43.     Honda failed to properly inspect and test the defective condensers of the Class Vehicles before their entry into the stream of commerce and before their sale to unsuspecting consumers.

44.     Honda failed to complete reasonable tests and inspections of the Class Vehicles, which would have revealed the Condenser Defect.

45.     The air conditioning system in Class Vehicles cannot and does not perform as intended, because neither Honda, nor any reasonable car designer, would design an air conditioning system that places the condenser unit in a position of extreme vulnerability when subjected to normal roadway conditions.  Further, Honda failed to manufacture its defective condensers from adequately durable materials to withstand normal driving conditions.  Honda has provided no information to buyers or lessees to inform them that the air conditioners within the Class Vehicles are vulnerable, are of insufficient strength, and therefore are unreliable (*i.e.*, that the vehicles have the Condenser Defect).

46.    Upon information and belief, Honda's knowledge about the problems with the condenser as described in this complaint is reflected in: its internal communications, including memoranda and e-mails it has sent and received related to the Condenser Defect; reports of condenser related air conditioning failures—including those compiled in the NHTSA database, which Honda regularly reviews—involving Honda's vehicles with this defective condenser design; and the tests conducted by Honda and others, including, but not limited to, failure mode and effects analyses (FMEA), human factors simulations, pre-release vehicle evaluation tests, computer simulations, and cost/benefit analyses.

47.    In September 2011, Honda entered into a settlement in the *Alin* case wherein they agreed to fully reimburse any out-of-pocket payments made by class members to repair road debris damage to their air condensers. Upon information and belief, the condenser problems associated with the 2011 settlement alerted Honda to the existence of the Condenser Defect and air conditioning problems that are now being experienced by Plaintiffs and Class Members in their 2016, 2017, 2018 and potentially 2019 model year Class Vehicles.

48.    Despite knowledge of the Condenser Defect, Honda failed to warn members of the Class and the Subclass of the Defect. Specifically, none of the members of the Class and the Subclass received a warning that the condenser in their Class Vehicles may not perform properly and as warranted, or that as a result drivers may experience a complete air conditioning failure due to the Condenser Defect.

49.    Upon information and belief, Honda, through its own pre-sale research and development, knew or should have known that reasonable alternative designs are available to prevent air conditioning failures like those associated with the Condenser Defect. Such alternative designs of the condensers, which include safeguards like protective shields and grills or utilizing more durable materials in the condensers design, prevent premature air conditioning failure and are used by other manufacturers, and are available through a number of after-market retailers.

**Reports to NHTSA  and others recount incidents of condenser failure.**

50.    NHTSA has received many reports of the premature failure of the air conditioning in Class Vehicles and leakage of coolant that is or may be directly associated with the Condenser Defect, including the reports copied verbatim below:

NHSTA Complaint on September 25, 2017 for 2016 Civic: CAR IS ONLY ONE YR OLD, NOT EVEN 33,000 MILES AIR CONDITIONER BLOWING HOT AIR, MANY OF MY FRIENDS HAVE SAME PROBLEM. HONDA WON'T HONOR WARRANTY. WANTS TO CHARGE OVER $500.00 TO START.

NHSTA Complaint on September 29, 2017 for 2016 Civic: BROUGHT 2016 HONDA CIVIC TO DEALERSHIP WITH A/C NOT PROPERLY WORKING (BLOWING WARM AIR), WAS TOLD PRIOR TO DROP OFF THAT IT WAS LIKELY A STONE THAT HIT THE CONDENSER CAUSING A LEAK.  DIAGNOSTIC TEST COST $135 + TAX, WAS TOLD THAT IT WAS A STONE THAT PUNCTURED THE CONDENSER, WAS ASSIMILATED TO "JUST AS IF A STONE HAD HIT THE WINDSHIELD AND CRACKED IT, IT WOULD NOT BE COVERED."  WINDSHIELDS ARE DESIGNED TO DEFLECT DEBRIS.  THIS IS NOT COVERED UNDER WARRANTY, AND APPEARS TO BE A COMMON (PREVIOUS CLASS ACTION LAWSUIT WAS SETTLED ON EARLIER HONDA VEHICLES WITH THIS EXACT PROBLEM: "A ROCK PUNCTURING THE CONDENSER" DUE TO DESIGN FLAW).  THIS IS ABSURD TO NOT TAKE CARE OF THE ISSUE AND CHARGE CONSUMERS $900+ FOR A PROBLEM THAT COULD EASILY HAPPEN AGAIN IF A "SMALL ROCK OR PEBBLE" IS ABLE TO PUNCTURE A PART.  17,800 MILES ON THE VEHICLE, 18 MONTHS OLD.  IF A SMALL PEBBLE CAN RUIN A CUSTOMER'S AIR CONDITIONING SYSTEM ON A BRAND NEW VEHICLE WHICH PER WARRANTY GUIDELINES IS NEITHER AN "ACCIDENT" OR "ABUSE" TO THE VEHICLE, IS THIS VEHICLE EVEN SUITED TO BE ON THE ROAD?  VERY DISAPPOINTING AS I WAS A LIFE LONG HONDA OWNER.

NHSTA Complaint on July 30, 2018 for 2016 Civic: THE AC COMPRESSOR AND CONDENSER ARE BOTH LEAKING.  ONE DEALERSHIP TRIED TO TELL ME THEY WERE LEAKING BECAUSE A ROCK HIT IT AND CAUSED THE DAMAGE, AND

IT COSTS $600 TO FIX.  BUT UPON PROPER DIAGNOSIS FROM ANOTHER DEALERSHIP, THEY DID TELL ME BOTH THE COMPRESSOR AND CONDENSER ARE LEAKING, AND IT WAS NOT CAUSED BY ROAD HAZARD DAMAGE.   THESE PRODUCTS HAVE KNOWN ISSUES THAT PEOPLE HAVE LISTED ONLINE.  MY CAR IS OUT OF WARRANTY, SO THE DEALERSHIP HAD TO FILE A CLAIM THROUGH GOOD WILL. THEY SAID THEY WERE WILLING TO PAY 50/50, WHICH LEAVES ME TO PAY $842 BEFORE TAXES TO GET THIS ISSUE FIXED.  THERE NEEDS TO BE A BETTER SOLUTION.  THIS IS UNSAFE THAT ALL OF THESE CARS HAVE LEAKING CONDENSERS AND COMPRESSORS AND IT IS A SCAM TO HAVE THE CUSTOMER PAY ANYTHING TO FIX AN ISSUE LIKE THIS.  THIS IS EXTREMELY UNSAFE BECAUSE WHEN IT IS HOT WEATHER OR RAINING AND THEN IT GETS COLD THE WINDSHIELD FOGS UP AND DOESN'T ALLOW YOU TO SEE WITHOUT HAVING THE AIR ON.   THE AC HELPS TO ELIMINATE ANY VISIBILITY ISSUES WHEN THE WEATHER CHANGES. CURRENTLY MY WINDSHIELD KEEPS FOGGING UP DUE TO NOT HAVING THE AC, ESPECIALLY WHEN ANOTHER CAR IS COMING TOWARDS ME WITH THEIR HEADLIGHTS, MY WINDSHIELD BLINDS ME.   THIS IS EXTREMELY UNSAFE AND WILL CAUSE AN ACCIDENT.  IF SOMEONE CAN PLEASE HELP ME BY LOOKING INTO THIS ISSUE AND POSSIBLE POSTING A SAFETY RECALL ON THESE PRODUCTS, I WOULD TRULY APPRECIATE IT.  I ALREADY SPOKE TO CORPORATE HONDA AND THEY DON'T SEEM TO CARE AND THEY SAY THAT THEY DON'T PUT OUT THEIR OWN RECALLS. BUT THIS IS A SERIOUS ISSUE THAT IS NOT OKAY, AND I SHOULD NOT HAVE TO PAY ANYTHING TO HAVE A FAULTY SYSTEM FIXED, WHEN I BOUGHT THE CAR THIS WAY.  I NOTICED THIS ISSUE AFTER THE CAR WAS ALREADY OUT OF WARRANTY, IT DIDN'T HAPPEN ON ONE SPECIFIC DAY, IT IS AN ONGOING ISSUE.

NHSTA Complaint on August 6, 2018 for 2016 Civic: AC ON THE DRIVER SIDE WARM AIR PASSENGER SIDE COLD AIR THEN NOTHING.  THIS STARTED WHILE DRIVING ON THE HIGHWAY AUGUST 3RD 2018 AND STOPPED WORKING AUGUST 6TH 2018.

NHSTA Complaint on October 6, 2018 for 2016 Civic: AIR

CONDITIONING A/C HAS BEEN NOT WORKING FOR THE LAST MONTH OR TWO. IT STARTED OFF BLOWING WARM AIR ON THE DRIVERS SIDE AND COOL ON THE PASSENGER SIDE. AFTER A FEW DAYS IT'S WARM ON BOTH SIDES NOW. THIS IS AN ONGOING PROBLEM WITH OTHER CIVIC OWNERS I KNOW. THIS NEEDS TO BE FIXED BY HONDA. I'VE HAD HONDA VEHICLES FOR PLENTY OF YEARS. ACCORDS, CRV AND OTHER YEAR CIVICS. I'M READY TO GIVE IT UP, SO MUCH FOR RELIABILITY.

NHSTA Complaint on November 3, 2018 for 2016 Civic: AIR CONDITIONING SYSTEM WENT OUT. BLOWS WARM AIR AND MAKES HISSING NOISES. IT TAKES A VERY LONG TIME TO DEFOG THE WINDSHIELD REDUCING VISIBILITY WHILE DRIVING AND MAKING IT UNCOMFORTABLE TO DRIVE. THE VEHICLE WAS IN MOTION WHEN THE PROBLEM WAS FIRST NOTICED. IT TAKES OVER 10 MINUTES TO DEFOG THE VEHICLE.

NHSTA Complaint on November 21, 2018 for 2017 Civic: MY VEHICLE HAS BEEN HAVING ISSUE WITH THE A/C FOR A COUPLE OF WEEK. TWO DAY AGO MY A/C STOP WORKING SO I TOOK IT TO MY LOCAL HONDA DEALER TO TAKE A LOOK AT IT. THEY TOLD ME THAT THE A/C COMPRESSOR HAS FAILED AND IT'S NOT COVERED UNDER WARRANTY DUE TO MY CAR HAVING 41K MILES. I TRIED TO EXPLAIN THAT THE CAR IS ONLY A YEAR OLD. THEY (DEALERSHIP) DID NOT WANT TO COVER IT UNDER WARRANTY DUE TO THE MILES. THE REPAIR COST WAS $1,500. I HAVE READ ONLINE THAT SEVERAL BUYER HAVE HAD THIS PROBLEM. THE DEALER ALSO MENTION THAT THEY HAVE BEEN RECEIVING A LOT OF CARS WITH THE SAME ISSUE. SOMETHING NEEDS TO BE DONE REGARDING THIS ISSUE. ALSO, I FORGOT TO MENTION THAT THE A/C TRIGGERED SOMETHING IN MY VEHICLE THAT WOULD NOT LET IT START FOR SEVERAL HOURS. THE CAR WAS PARKED WHEN THIS OCCURRED. I BELIEVE A RECALL ON THE A/C IS ENTITLED.

NHSTA Complaint on April 8, 2019 for 2016 Civic: IN THE SUMMER OF 2018, WITH THE AIR CONDITIONING SYSTEM ON, IT WAS BLOWING WARM AIR ON THE DRIVER SIDE

WHILE THE PASSENGER SIDE DISCHARGING COLD AIR. TOOK THE CAR TO THE DEALER FOR INSPECTION. THE SERVICE DEPARTMENT INFORMED US THERE WAS A LEAK. A DYE WAS ADDED TO THE RECHARGED REFRIGERANT. EARLY THIS MONTH, APRIL, THE AC WASN'T PROVIDED ANY COOLING. TOOK THE CAR TO THE DEALER AND WAS INFORMED THAT THE AC COMPRESSOR ALONG WITH REFRIGERANT PIPING WAS LEAKING AND NEED TO BE REPLACED.

<u>NHSTA Complaint on April 12, 2019 for 2016 Civic</u>: RANDOMLY HEARD A POP, AND THE AC STOPPED WORKING. TOOK CAR TO A DEALERSHIP THAT TRIED TO TELL ME IT WAS ROAD HAZARD DAMAGE. AFTER LEAVING HONDA I CALLED BACK TO INQUIRE MORE INFORMATION, HONDA REFUSED TO SHOW ME THE ISSUE BUT TOLD ME THEY WOULD CHARGE ME $200 FOR A DIAGNOSIS FEE. SOMETHING SEEMED WRONG. CHECKED ONLINE AND SAW THOUSANDS OF COMPLAINTS FOR THE SAME ISSUE. CALLED HONDA CORPORATE AND WAS TOLD TO TAKE IT FOR A SECOND OPINION ELSEWHERE. THEY KNEW ABOUT THE AC ISSUES AND SAID IT WOULD BE COVERED UNDER WARRANTY EXCEPT MY CAR IS OUT OF WARRANTY BECAUSE OF HIGH MILEAGE. WITHOUT THE AC THE DEFOGGER DOESN'T WORK. THIS IS EXTREMELY UNSAFE IN CERTAIN WEATHER CONDITIONS. NOT SURE HOW TO GET HONDA TO RECALL THIS BUT IT SEEMS THEY HAVE A HISTORY OF AC UNITS NOT WORKING PROPERLY IN CARS. IF SOMEONE DIES ON THE ROADWAY BECAUSE OF A VISIBILITY ISSUE, HONDA WILL HAVE A MAJOR LAWSUIT AHEAD OF THEM. HELP US HONDA OWNERS GET THE RECALL WE DESERVE SO WE CAN SAFELY DRIVE THE CARS WE SPENT SO MUCH MONEY ON. THIS IS UNSAFE AND NOT OKAY!

## CLASS ACTION ALLEGATIONS

51.    Pursuant to Rules 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will seek certification of a nationwide class preliminarily defined as follows:

**All persons who purchased or leased a 2015 to 2019 Honda Civic in the United States (the "Class").**

52.     Plaintiffs David and Laura Elkins also seek certification of a California Subclass defined as follows:

**All persons who purchased or leased a 2015 to 2019 Honda Civic in California.**

53.     The Subclass defined above is referred to collectively as the "State Subclass" or the "Subclass."

54.     The Class and Subclass definitions specifically exclude: (a) all persons who have had their Class Vehicle re-purchased or "bought back" by Honda (whether the buy-back was required by law or was solely by agreement), or who previously signed a release of the defect claims alleged in this Complaint; (b) Defendants and any of their current officers or executives; (c) any person, firm, trust, corporation, or other entity who purchased a Class Vehicle solely for resale; and (d) any Judge presiding over this action.

55.     The scope of this class action neither seeks to include nor extinguish any personal injury, death, or property damage claims arising from or relating to the Condenser Defect regarding any Class Vehicle.

56.     The proposed classes meet the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).

57.     *Numerosity and Ascertainability*: The Class and Subclass are comprised of tens of thousands of Class Vehicle owners throughout the United States, making joinder impractical. Moreover, the Class and Subclass are composed of an easily ascertainable, readily identifiable set of individuals and entities who purchased Class Vehicles.  The members of the Class and Subclasses are so numerous that joinder of all members is impracticable.  The precise number of Class and Subclass Members can be ascertained only through discovery, which includes Honda's network sales, service, and complaint records.  The disposition of their

claims through a class action will benefit both the parties and this Court. Furthermore, members of the Class and Subclass may be identified from records maintained by Honda and its agents, and may be notified of the pendency of this action by mail, or other appropriate means, using a form of notice customarily used in consumer class actions.

58.    *Commonality*: The critical questions of law and fact common to the Class and Subclass that will materially advance the litigation include, but are not limited to, the following:

a.    Whether Honda engaged in the conduct alleged herein;

b.    Whether the Class Vehicles contain a safety defect;

c.    Whether Honda knew about the Condenser Defect and, if so, how long Honda has known of it;

d.    Whether Honda defectively designed or manufactured the Class Vehicles;

e.    Whether Plaintiffs and Class Members were exposed to the same omissions of fact or misleading advertising regarding the Condenser Defect;

f.    Whether Honda's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws associated herein;

g.    Whether Plaintiffs and Class members overpaid for their Class Vehicles;

h.    Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief, and

i.    Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount.

59.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class and Subclass, as all such claims arise out of Honda's conduct in

designing, manufacturing, warranting, and selling the Class Vehicles with the Condenser Defect.

60.     *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of Class Members and have no interests antagonistic to those of the Class.  Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, and product design defects.

61.     *Predominance*: This class action is appropriate for certification because questions of law and fact common to Class and Subclass Members predominate over questions affecting only individual members.

62.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring individual Class and Subclass Members to bring separate actions would create a multiplicity of lawsuits burdening the court system and the risks of inconsistent rulings and of contradictory judgments. Alternatively, the diminution in value attributable to the defect may not be sufficient to economically justify individual litigation of these claims. Because the damages suffered by each Class and Subclass Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the only way each Class and Subclass Member can redress the harm that Honda caused.

63.     This lawsuit is also maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class and Subclass Members, thereby making final injunctive relief appropriate with respect to the Class and Subclasses.

## **TOLLING OF STATUTES OF LIMITATIONS**

64.     *Discovery Rule*. Plaintiffs' claims accrued upon discovery that the air conditioning system that Honda designed, manufactured, and installed into the Class Vehicles suffered from the Condenser Defect, and that the Condenser Defect

could not be repaired.  While Honda knew of and omitted to disclose the Condenser Defect, Plaintiffs, Class Members, and Subclass Members could not and did not discover this fact through reasonable diligent investigation until after they experienced air conditioning failures, and reasonably excluded other potential causes of the failures.

65.    *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the Condenser Defect.  Honda kept Plaintiffs and all Class and Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and Subclass Members.  Plaintiffs and Class Members could not reasonably have discovered the Condenser Defect.

66.    *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiffs, as well as Class and Subclass Members, the true character, quality, and nature of the Class Vehicles' air conditioning system.  At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' air conditioners, including the Condenser Defect.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class and Subclass Members.  Plaintiffs and Class and Subclass Members reasonably relied upon Honda's knowing and/or active omissions.  Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

67.    *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Condenser Defect.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its

possession, custody, and control, to the exclusion of the Plaintiffs, Class and Subclass Members. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the National Class, or**
**alternatively, on behalf of the State Subclass)**

68.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

69.   Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the State Subclass against Honda.

70.   Honda expressly warranted that it would cover the cost of all parts and labor to repair any item on the vehicle when it left the manufacturing plant that is defective in material or workmanship.

71.   Further, Honda advertised the Class vehicles as "safe" and "pushing the boundaries of automotive engineering" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the Condenser Defect, which renders the Class vehicles dangerous and unreliable. This omission was material to the Plaintiffs and Class Members.

72.   Honda materially breached its expressed warranties by selling and leasing Class Vehicles that contained the Condenser Defect, which rendered the Class Vehicles unsafe or unfit for use as warranted. Thus, at the point of sale, the written warranties were breached by Honda as the Class Vehicles were unsafe and contained an inherent design defect.

73.   Honda breached the express warranty because it did not promptly

replace, repair, or buy back the Class Vehicle of Plaintiffs and the other Class Members.

74.     Honda was put on notice of the breach by Class Member's online complaints available on NHSTA and other online public websites, and by notification of the Condenser Defect directly by its authorized dealerships and service centers.

75.     In addition, Honda's express warranty has failed its essential purpose due to the Condenser Defect not being covered under either the Powertrain or Limited warranties that accompanied each Class Vehicle. Specifically, placement of the condenser exposed the part to unreasonable risk in normal and expected driving conditions, lack of any protective measures for the condenser, and the use of sub-standard materials which are prone to damage in the construction of the condenser.

76.     As a result of Honda's breach of its express warranties, Plaintiffs and the other Class Members received goods in a sub-standard and unsafe condition that substantially impairs their value to Plaintiffs and the other Class Members. Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Class Vehicles and the inability to safely use their Class Vehicles.

77.     Plaintiffs and Class Members are entitled to recover all damages as a result of said breach of warranties in an amount in excess of $5,000,000.

**SECOND CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq*.**
**(On behalf of the National Class, or**
**alternatively, on behalf of the State Subclass)**

78.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

79.    Plaintiffs bring this claim individually and on behalf of the National Class, or alternatively on behalf of the State Subclass against Honda.

80.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

81.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

82.    The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

83.    This District Court has original jurisdiction over this matter pursuant to the requirements of CAFA and therefore can exercise supplemental jurisdiction over Plaintiffs' Magnuson-Moss claim.

84.    Honda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

85.    Honda breached these warranties as described in more detail above. Without limitation, the Class Vehicles fail to provide air conditioning as warranted, fail to protect the air conditioning systems for foreseeable and usual road debris when the Class Vehicles are subjected to expected and normal use. The Class Vehicles share a common design defect in that the Class Vehicles fail to operate as represented by Honda, specifically, that they are unfit for ordinary use.

86.    Plaintiffs and other Nationwide Class Members have had sufficient direct dealings with Honda or its agents (dealerships or corporate representatives) to establish privity of contract between Honda, on one hand, and Plaintiffs and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Honda and its dealers and, specifically, of Honda's express and implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty

agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

87.     Affording Honda a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs and many others already alerted Honda of the defect, and Honda has refused to honor the warranties, and Honda has failed to cure the Condenser Defect. At the time of sale or lease of each Class Vehicle, Honda knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

88.     Honda has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and Class Members, because the Class Vehicles fail to perform as represented due to the undisclosed Condenser Defect. Honda failed to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Class.

89.     Honda is under a continuing duty to inform its customers of the nature and existence of potential safety related defects in the Class Vehicles.

90.     Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the Condenser Defect in the Class Vehicles.

91.     Plaintiffs and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's wrongful acts

and practices, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against Honda, and accordingly request the following:

a.  An order certifying the proposed Class and Subclasses and designating Plaintiffs as named representatives of the Classes and Subclass, and designating the undersigned as Class Counsel;

b.  A declaration that Honda is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

c.  A declaration that both the Basic Limited and Powertrain Limited Warranties fail their essential purpose;

d.  An order enjoining Honda from further deceptive distribution, sales, and lease practices with respect to their Class Vehicles; to repair all other damages to the Class Vehicles caused by the Defect;

e.  A further order enjoining Honda from the conduct alleged herein, including an order enjoining Honda from concealing the existence of the Defect during distribution, sales, and advertisements, as well as during customer and warranty service visits for the Class Vehicles;

f.  An award to Plaintiffs and Class Members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

g.  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and all other applicable laws;

h.  An award of pre-judgment and post-judgment interest, as provided by law;

i.   Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs individually and on behalf of all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Date: May 2, 2019                    LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:   /s Todd M. Friedman
      Todd M. Friedman
      Law Offices of Todd M. Friedman
      21550 Oxnard Street, Suite 780
      Woodland Hills, CA 91367
      tfriedman@toddflaw.com
      Phone: (323) 306-4234
      Fax: (866) 633-0228


      Gregory F. Coleman*
      greg@gregcolemanlaw.com
      Adam A. Edwards*
      Adam@gregcolemanlaw.com
      **GREG COLEMAN LAW PC**
      First Tennessee Plaza
      800 S. Gay Street, Suite 1100
      Knoxville, TN 37929
      Telephone: (865) 247-0080
      Facsimile: (865) 522-0049

      * *pro hac vice* application to follow

      *Attorneys for Plaintiffs*