LEWIS BRISBOIS BISGAARD & SMITH LLP
ERIC Y. KIZIRIAN, SB# 210584
  E-Mail: Eric.Kizirian@lewisbrisbois.com
MICHAEL K. GRIMALDI, SB# 280939
  E-Mail: Michael.Grimaldi@lewisbrisbois.com
ZOURIK ZARIFIAN, SB# 306368
  E-Mail: Zourik.Zarifian@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants
American Honda Motor Co., Inc. and
Honda North America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DAVID ELKINS AND LAURA ELKINS, PATRICK DE FONTBRUNE, HONGLIANG FU, RACHEL FAIRCHILD, RYAN MANGLE, AMADO MUNOZ, BEN HU, CHARLOTTE KAPETENAKIS, REGAN FARLEY, SHARON BECK, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       vs.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation, and HONDA NORTH AMERICA, INC., a California corporation,<br><br>       Defendants. | Case No. 8:19-CV-00818 JLS (KESx)<br><br>Hon. Josephine L. Staton<br><br>**REPLY IN SUPPORT OF DEFENDANTS AMERICAN HONDA MOTOR CO., INC. AND HONDA NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR**<br><br>**(1) LACK OF STANDING (FRCP 12(B)(1)), AND**<br><br>**(2) FAILURE TO STATE A CLAIM (FRCP 12(B)(6))**<br><br>Date:   Friday, January 10, 2020<br>Time:  10:30 a.m.<br>Ctrm:  10A<br><br>Filed concurrently with the Supplemental Declaration of Brad Ortloff |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.      Introduction ......................................................................................... 1

II.     Plaintiffs Have No Injury Traceable to Honda and Lack Art. III and Statutory Standing. .......................................................................... 2

        A.    Plaintiffs Have Failed to State a Defect Beyond the AC Condenser Issue That Honda Addressed before Plaintiffs Filed the FAC. .............................................................................. 2

        B.    Honda's Voluntary Actions Have Addressed Any Plausible Claim of Injury. .............................................................................. 4

        C.    Plaintiffs' Cost of Repair Theory Fails. ................................... 4

        D.    There Is No Plausible Risk of Future Injury. ........................... 5

        E.    The Overpayment/Diminished Value Theory Fails. ................. 6

        F.    The NJ Plaintiff Lacks Statutory Standing for Another Reason. ............ 7

III.    Plaintiffs Concede Some of Their Claims Lack Merit. ....................... 8

IV.     Plaintiffs Cannot Plead Generic Warranty and Unjust Enrichment Claims as They Must Allege the Applicable Law, and They Lack Standing to Assert These Nationwide Class Claims. ......................... 9

V.      Plaintiffs Have Not Pled an *Unreasonable* Safety Issue in Their Attempt to Manufacture an Implied Warranty Claim or an Omission-Based Consumer-Protection Claim. .................................................. 10

VI.     Plaintiffs Do Not Allege any Viable Warranty Claims ...................... 12

        A.    Plaintiffs' Claim that Honda's Standard Express Warranty Is Unenforceable Lacks Merit. .................................................. 12

        1.    Honda's Limited Warranty is Not Unconscionable. ............... 14

        2.    The Express Warranty Does Not Fail Its Essential Purpose. ................. 15

        B.    The NVLW Does Not Apply to Design Defects. ................... 16

        C.    The California Plaintiffs' Express-Warranty Lemon Law Claims Fail. ................................................................................. 17

        D.    Plaintiffs Lack Privity With Honda Which Bars Their Common Law Implied Warranty Claims. ............................................. 17

        E.    Plaintiffs' Magnusson-Moss Act Claim Should Be Dismissed. ........... 19

II.     Plaintiffs' Omission-Based Consumer-protection claims fail Because There Was No Duty to Disclose. ............................................. 19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                  i                           8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

     A.    While a Safety Issue Is Required to Trigger a Disclosure Obligation, Plaintiffs claims Still Fail Because the Condenser Issue Does Not Go to Vehicle's *Central* Function. .............................. 19

     B.    Honda Had No Knowledge of Defect When Plaintiffs Acquired their Cars. ............................................................................... 21

     C.    Plaintiffs Have Not Alleged Active Concealment. ................................ 24

III.    Plaintiffs' Unjust Enrichment Claim Fails for All the Reasons Already Mentioned and Because There Is Already a Contract. ..................................... 25

IV.    Conclusion ......................................................................................................... 25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## Cases

*Alban v. BMW N. Am.*,
2011 WL 900114 (D.N.J. Mar. 15, 2011) ....................................................17

*Ashley Square, Ltd. v. Contractors Supply Orlando, Inc.*,
532 So. 2d 710 (Fla. Dist. Ct. App. 1988) ...................................................20

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,
2012 WL 924380 (D.N.J. Mar. 19, 2012)......................................................22

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)................................................................7, 14

*Brand v. Hyundai Motor Am.*,
226 Cal. App. 4th 1538 (2014)............................................................13, 14

*Cadena v. Am. Honda Co.*,
2019 U.S. Dist. LEXIS 117584 (C.D. Cal., May 29, 2019) .....................22

*Chiarelli v. Nissan N. Am., Inc.*,
2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015)...............................................17

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)...........................................................21, 22, 23

*Clemens, Burr v. Sherwin Williams Co.*,
42 Cal. 2d 682 (1954)...........................................................................22

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011)...........................................................24, 25

*Cummings v. FCA US LLC*,
401 F. Supp. 3d 288 (N.D.N.Y. Aug. 1, 2019) .............................................21

*Doll v. Ford Motor Co.*,
814 F. Supp. 2d 526 (D. Md. 2011) ..............................................................24

*Ellis v. JPMorgan Chase & Co.*,
752 F. App'x 380 (9th Cir. 2018).................................................................30

*Gasser v. Kiss My Face, LLC*,
2018 U.S. Dist. LEXIS 162165 (N.D. Cal. Sep. 21, 2018)............................11

*Hadley v. Chrysler Grp., LLC*,
624 F. App'x 374 (6th Cir. 2015)...............................................................6, 8

*Herremans v. BMW of N. Am.*,
2014 U.S. Dist. LEXIS 145957 (C.D. Cal., Oct. 3, 2014)............................29

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)..............................................................23, 24

*In re GM*,
   2019 U.S. Dist. LEXIS 151142 (E.D. Mich. Sep. 5, 2019) .....................9, 16

*In re MyFord Touch*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ..........................................................22

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal., Mar. 5, 2018).............................................16

*In re Ford Prod. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..........................................6, 7, 16

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) .............................................12, 18, 19

*Kirsopp v. Yamaha Motor Co.*,
   2015 U.S. Dist. LEXIS 68639 (C.D. Cal., Jan. 7, 2015) .............................21

*Long v. Graco Children's Prods., Inc.*,
   2013 U.S. Dist. LEXIS 121227 (N.D. Cal., Aug. 26, 2013)..........................21

*Macdougall v. Am. Honda Motor Co, Inc.*,
   2017 U.S. Dist. Lexis 221537 (C.D. Cal. Dec. 4, 2017)..............................22

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
   2013 WL 5574626 (D.N.J. Oct. 9, 2013)......................................................17

*Manheim v. Ford Motor Company*,
   201 So.2d 440 (Fla. 1967)............................................................................20

*Mazza v. American Honda Motor Co., Inc.*,
   666 F.3d 581 594 (9th Cir. 2012)................................................................12

*McConnell v. FEC*,
   540 U.S. 93 (2003) ........................................................................................7

*Melton v. Century Arms, Inc.*,
   243 F. Supp. 3d 1290 (S.D. Fla. 2017) ........................................................24

*Miller v. Gen. Motors Corp.*,
   99 A.D.2d 454 (N.Y. App. Div. 1st Dept. 1984) ..........................................20

*Miller v. General Motors, LLC*,
   2018 WL 2740240 (E.D. Mich., June 7, 2018)..............................................7

*Nat. Res. Def. Council v. EPA*,
   735 F.3d 873 (9th Cir. 2013)...................................................................5, 18

*Paracor Fin., Inc. v. GE Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996)........................................................................30

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28

iv

8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

*Philippine Nat'l Oil Co. v. Garrett Corp.*,
    724 F.2d 803 (9th Cir. 1984)........................................................................18

*Pilgrim v. Gm Co.*,
    2019 U.S. Dist. LEXIS 194406 (C.D. Cal., Oct. 4, 2019)............................22

*Punian v. Gillette Co.*,
    2016 U.S. Dist. LEXIS 34164 (N.D. Cal., Mar. 15, 2016).........................29

*Resnick v. Hyundai Motor Am., Inc.*,
    2016 U.S. Dist. LEXIS 160179 (C.D. Cal., Nov. 14, 2016)........................16

*Rivera v. Ford Motor Co.*,
    2017 WL 3485815 (E.D. Mich. Aug. 15, 2017) ...........................................17

*Romero v. Flowers Bakeries, LLC*,
    2016 WL 469370 (N.D. Cal. Feb. 8, 2016)....................................................10

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014)........................................................................30

*Rutledge v. HP*,
    238 Cal. App. 4th 1164 (2015)...............................................................24, 25

*Silvio v. Ford Motor Co.*,
    109 Cal. App. 4th 1205 (2003)......................................................................20

*State v. Chrysler Group*,
    2015 U.S. Dist LEXIS 21022 (C.D. Cal., Feb. 20, 2015).............................19

*Sugasawara v. Ford Motor Co.*,
    2019 U.S. Dist. LEXIS 142308 (N.D. Cal. Aug. 21, 2019)....................5, 6, 8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017).......................................12, 13, 14, 19, 23, 26

*Wilson v. HP*,
    668 F.3d 1136 (9th Cir. 2012).............................................................4, 25, 28

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011)...........................................................25

Statutory Authorities

Bus. & Prof. Code §§17203-17204 ......................................................................7

Cal. Civ. Code § 1793.2........................................................................................17

Cal. Civ. Code § 1794(b)(2) ..................................................................................7

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                          v                    8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

<u>Additional Authorities</u>

*https://static.nhtsa.gov/odi/tsbs/2016/MC-10084408-2280.pdf* ..................................3

*https://www.automobilemag.com/news/automotive-air-conditoning-history/.* .........10

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.   INTRODUCTION

Plaintiffs' Opposition confirms each claim in the First Amended Complaint ("FAC") is hopelessly deficient and plaintiffs have no injury or standing. This 100-page shotgun pleading attempts to mask with bulk what it lacks in substance—it does not even specify a defect theory for plaintiffs' ACs. Instead, plaintiffs adopt information in Honda's voluntary warranty extension, for an issue Honda voluntarily addressed and remedied, as their ticket to liability.  But this strategy is critically flawed as Honda sets forth in its motion; the Opposition does nothing to alter this fact. Plaintiffs do not explain how standing exists when plaintiffs make a choice to avoid Honda's free remedy. Nor do they explain how the FAC states any plausible claim when plaintiffs' litigation strategy is to latch on to a "defect" Honda voluntarily addressed.  Plaintiffs are getting far greater protection under Honda's generous 10-year warranty extension than the standard 3 year warranty they anticipated at the time of purchase.

The opposition seeks to sow confusion to avoid dismissal. But it remains clear that even *if* plaintiffs could establish standing (they cannot), the FAC does not identify any breach of warranty or actionable misconduct under state consumer protection laws since each plaintiff's claimed AC issue either (1) occurred in-warranty (and was repaired for free), (2) occurred after the warranty expired, or (3) was damaged due to outside influences (road debris) while driving.  And now all customers will be reimbursed for covered post-warranty failures with extended coverage for future condenser malfunctions (if any).  There is no viable injury claim here or any plausible safety claim that actually impacts plaintiffs' ability to use their cars. There is no knowledge of a defect in 2016 either and thus, no failure to disclose.  Even a cursory review of the Ninth Circuit's authoritative guidance on this issue makes this abundantly clear.

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                                                    1                         8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

In short, Honda acted responsibly when it provided a voluntary warranty extension that addresses *any* potential claim of injury.   Plaintiffs' opposition provides no valid justification for this opportunistic lawsuit, which must be dismissed in its entirety.

## II.   PLAINTIFFS HAVE NO INJURY TRACEABLE TO HONDA AND LACK ART. III AND STATUTORY STANDING.

### A.   Plaintiffs Have Failed to State a Defect Beyond the AC Condenser Issue That Honda Addressed before Plaintiffs Filed the FAC.

Plaintiffs claim "the Defect is systemic and manifests in a variety of components, of which the condenser is but one." Opp. 3 n.4. Yet they have not plausibly alleged facts to show any continuing issue.  In November 2019, Honda mailed notices to consumers to inform them of a "Warranty Extension" for the "A/C condenser" that were not "manufactured to specification" and thus, may leak due to corrosion.  Supplemental Declaration of Brad Ortloff ("Supp. Ortloff Decl.") ¶ Ex. 3. Honda explained that owners of 2016-2018 Civics could file a request for reimbursement if they "paid to have [the] vehicle's A/C condenser replaced" due to this manufacturing issue (not road damage). *Id.* The reimbursement offer includes *all* "Diagnosis and itemized cost of repair – parts and labor." *Id.*

Plaintiffs do not state that they applied for reimbursement under this program. They instead attempt to manufacture injury by speculating the AC has an unidentified "systemic defect" and thus, the warranty extension is not sufficient. Opp. 3:18. Of course, AC systems consist of numerous parts and components. And plaintiffs have not alleged plausible facts to show their cars have an AC issue other than the one Honda already addressed.  If plaintiffs had any actual facts to support their speculative assertions, they would have pled them in the 100-page FAC.  They did not do this and the opposition offers nothing beyond the commonly known fact that various AC components, like all other car parts, may be subject to normal wear-and-tear failures, which has happened in a small number of cars among the 1.2 million cars in the putative class (¶ 43). This fact-free accusation about a systemic

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                    2                          8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

1  defect, based on isolated failures of wear-and-tear components in a 1.2 million

2  vehicle population, is meaningless.

3         Plaintiffs' effort to support a claimed "systemic" defect theory by falsely

4  labeling Honda's 2016 "Tech Line *Summary* Article" as a more serious Technical

5  Service Bulletin ("TSB") also fails. FAC ¶ 102, n. 29 (citing

6  *https://static.nhtsa.gov/odi/tsbs/2016/MC-10084408-2280.pdf*)). This Summary

7  merely states a "low pressure suction hose may be rubbing against the bracket" and

8  that "[t]his rubbing comes from a variation in the hose profile," but "[f]ortunately,

9  there's just a *very small quantity* of those hoses in the market." *Id.* While 8 out of

10 the 10 plaintiffs have 2016 Civics (MTD 3), the Opposition identifies just one

11 plaintiff with a 2016 Civic that had a hose repair. Opp. 23:11-12. Plaintiff Fu alleges

12 a *high*-pressure hose replacement and that a "different line" also was replaced (no

13 explanation of whether this was a "low pressure suction hose"). FAC ¶¶ 166, 170.

14 That one plaintiff *may* have a hose replaced for *free* (¶ 166) is consistent with this

15 Summary's explanation that there is "very small quantity of those hoses."

16         In short, plaintiffs have not plausibly alleged facts to show any "systemic"

17 defect of a complicated AC system. Instead, they list two *unconnected* issues (hose

18 and condenser), both of which Honda has already acknowledged *and addressed* by

19 way of free replacements. The issue with the condenser is possible "corrosion" (Dkt.

20 40-2, p. 4/17), whereas the issue with the few affected hoses was possible

21 "rubbing." These are facially unrelated. And plaintiffs have not attempted to allege a

22 *single fact* explaining what the defect is with the AC compressor besides pointing

23 out a few replacements in a million-plus vehicle population. Their evidence free,

24 fact free accusations, buttressed by isolated examples of AC issues, fall well short of

25 alleging a plausible "systemic defect" beyond the issue Honda already voluntarily

26 addressed.

27 / / /

28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                    3                        8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

### B.   Honda's Voluntary Actions Have Addressed Any Plausible Claim of Injury.

Like all automakers, Honda never promised its vehicles would last forever. Instead, Honda promised to provide free repairs if manufacturing defects led to component failures during a defined warranty period.   None of the plaintiffs' claimed injuries here are "fairly traceable" to Honda's alleged conduct: Two plaintiffs' ACs were damaged by road debris (while other plaintiffs have purposefully left their allegations vague) (MTD 6:3-4 (Elkins, Kapetenakis)); Opp. Ex. A (Kapetenakis repair order stating "upon inspection found A/C condenser damaged by impact"); five plaintiffs' repairs *post*-date Honda's limited warranty period (MTD 6:13-21 (Fairchild, Mangle, Kapentenakis Farley, DeFontbrune))— plaintiffs do not dispute Honda has provided *in*-warranty repairs for covered AC issues. FAC ¶¶ 179-81(Fairchild received a free in-warranty repair).

Plaintiffs' claim of injury here is based on post-warranty failure.  If this were viable, it "would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product." *Wilson v. HP*, 668 F.3d 1136, 1141-42 (9th Cir. 2012). But this theory fails in any event since Honda has offered a warranty extension with reimbursement to consumers who "paid to have [their] vehicle's A/C condenser replaced because of leaks caused by the manufacturing process." Supp. Ortloff Decl. Ex. 3.  The reimbursement covers all "[d]iagnosis and itemized cost of repair – parts and labor." *Id.* Honda made both a 12(b)(1) facial and factual standing challenge, which shifts the burden to plaintiffs to show injury.  MTD 5 n.2.  Plaintiffs have not applied for a warranty-extension reimbursement, let alone met their burden to show they were denied payment.

### C.   Plaintiffs' Cost of Repair Theory Fails.

Plaintiffs generalize that all their repairs were "ineffective and that they now must pay for additional repairs because their warranty expired." Opp. 4:7-8. But courts reject the "cost of repair" theory of harm in situations like here where

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

consumers reject a free remedy in the attempt to skirt past the pleading stage. *See, e.g., Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 U.S. Dist. LEXIS 142308, at *15 (N.D. Cal. Aug. 21, 2019) (finding cost-of-repair theory of harm does not confer standing because plaintiffs were offered a free recall remedy by the automaker that they did not avail themselves of). There is no functional difference between a recall and the warranty-and-reimbursement program here.

### D.    There Is No Plausible Risk of Future Injury.

Plaintiffs also claim "injury" based on speculation of a "strong likelihood that their AC Systems will require future repairs." Opp. 6 n.6.  But "an injury is 'actual or imminent' [only] where there is a 'credible threat' that a probabilistic harm will materialize." *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013). As Honda's warranty extension makes clear, it was fixing the condenser because—over the course of multiple years—the condenser was subject to corrosion (this is why plaintiffs' issues were manifesting after the warranty expired). *See* Table 1 below. Plaintiffs also concede "Honda introduced a ***new condenser*** in or around September of this year." Opp. 3:19. The FAC thus relies on a *false* claim that Honda is "using equally defective replacement parts." FAC ¶ 112. Plaintiffs contradict themselves in the Opposition and repeat the false claim that condenser repairs are with "equally defective replacement parts." Opp. 8:15; *see also* Opp. 1:17 ("identical, inherently defective replacement components"). If plaintiffs have any future condenser issue, it is covered by Honda's generous 10 year warranty extension.  Plaintiffs have not plausibly alleged the free remedy does not fully alleviate any future harm.

For example, in *Sugasawara*, Ford offered a recall remedy that plaintiffs did not seek. The plaintiffs alleged this remedy was "ineffectual," but Judge Koh found this was a "conclusory and speculative" assertion. 2019 U.S. Dist. LEXIS 142308, at *16-17 (citing *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015); ("[T]he plaintiffs' assertion that the [] repair may not be effective evidences a hypothetical possibility rather than an actual or imminent injury."); *In re: Ford*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                          5                              8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

1  *Prod. Liab. Litig.*, 2001 WL 1266317, at *5 (D.N.J. Sept. 30, 1997) ("Nowhere in
2  the complaint do plaintiffs describe what injury Subclass B members have sustained
3  that might require further compensation beyond the offer to install a replacement
4  ignition switch free of charge.")). *Sugasawara* further explains that since "the
5  Complaint does not state whether [plaintiff] has availed himself of the recall
6  remedy. … *he cannot thereby manufacture standing*" by failing to seek the remedy.
7  *Id.* at *17 (emphasis added). Thus "[a]ny defect that *persists* in [plaintiff's] truck is
8  not fairly 'traceable' to Ford but *rather* to [plaintiff]; causation would therefore be
9  lacking." *Id.* at *17-18 (citing *McConnell v. FEC*, 540 U.S. 93, 226-28 (2003)
10  (holding plaintiffs' decision "not to solicit or accept large contributions" was "their
11  personal choice" and therefore not "fairly traceable" to a campaign reform act). This
12  "theoretical risk of future injury from the Defect provides no basis for standing." *Id.*

13      This same logic applies even more here.  Plaintiffs have chosen to forgo free
14  reimbursement and Honda has offered to cover future repairs.  Indeed, five plaintiffs
15  joined this suit in the FAC *with knowledge* Honda had offered a free repair.  MTD
16  7:6-9; FAC ¶187 (Fairchild admits Honda emailed her about the warranty extension
17  before she appeared). Plaintiffs' summary opinions about Honda's warranty
18  provides no basis for their claim the remedy is inadequate.[1]

19      **E.   The Overpayment/Diminished Value Theory Fails.**

20      Plaintiffs next claim of injury based on the alleged  "diminution in value of
21  their Vehicles, or the amount by which they overpaid for vehicles that suffer from a
22  known, safety-related Defect" (Opp. 5:13-15) also fails. Plaintiffs have no proof of

---

[1] *See, e.g.,  Miller v. Gen. Motors, LLC*, , 2018 WL 2740240, at *7 (E.D. Mich.,
June 7, 2018) (refusing "to speculate that . . . the software update" provided
pursuant to a recall "would have been insufficient to permanently cure the defect in"
plaintiffs' vehicles); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)
(affirming that "the alleged loss in value does not constitute a distinct and palpable
injury that is actual or imminent because it rests on a hypothetical risk of hearing
loss to other consumers").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                          6                          8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

"overpayment" for their cars, and with Honda's voluntary warranty extension, their cars have *greater* protection than the warranty Honda promised at the time of sale. If anything, the added warranty *adds* value to their cars. Plaintiffs cannot allege an injury remains *after* they do not file for reimbursement, nor can they prove any future repair with a newly-designed condenser would fail. *Sugasawara* rejected a similar overpayment theory, reasoning that "[i]f the post-recall remedy Vehicles perform as they would without the Defect, then it *follows that the Vehicles' pre-defect values have likewise been restored.*" 2019 U.S. Dist. LEXIS 142308, at *19.

*Hadley v. Chrysler*, 624 F. App'x 374 (6th Cir. 2015) is also instructive. There, Chrysler issued a recall. *Id.* at 378. The plaintiffs alleged their vehicles were worth less "based on the existence of the defective component from the moment of purchase." *Id.* The court held plaintiffs had failed to establish an injury because "the repair . . . the plaintiffs received removed the defect upon which [their] diminished-value injury claim is based." *Id.* So too here.

Plaintiffs' claims are not viable under Art. III when plaintiffs lack a concrete injury that is fairly traceable to Honda's alleged wrongdoing. The same is true for statutory standing. Plaintiffs do not dispute their claims each require a plausible claim of injury caused by Honda. MTD 9 n.5. This is why their statutory and warranty claims also fail. *See, e.g.*, Bus. & Prof. Code §§17203-17204 (UCL requires an "injury in fact... *as a result of* the unfair competition"); Cal. Civil Code § 1794(b)(2) (the "measure of damages shall include the cost of repairs necessary to make the goods conform").

In sum, Honda has done its part and provided full remedies for any plausibly alleged harm. This no-injury suit should not be its reward.

### F.   The NJ Plaintiff Lacks Statutory Standing for Another Reason.

Plaintiff Mangle claims Honda refused to honor his warranty unless he paid a potentially non-refundable diagnostic fee, forcing him to repair his vehicle himself, and the extension program is thus unlikely to provide him relief. FAC ¶¶ 191-200;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Opp. 6:20-7:2. But his vague argument fails because Mangle refused to take his car in to a Honda dealership, which prevented a finding that his claimed AC issue was covered under the express warranty.   FAC ¶¶ 194-95.   He therefore has not plausibly alleged Honda refused to make an in-warranty repair.  Also, "[a] plaintiff cannot demonstrate an ascertainable loss [under the NJ Consumer Fraud Act] where the allegedly defective component outperforms its warranty period." *In re GM*, 2019 U.S. Dist. LEXIS 151142, *62 (E.D. Mich. Sep. 5, 2019) (discussing NJCFA claim).  Indeed, "New Jersey courts have rejected NJCFA claims by plaintiffs whose products outlasted their warranties because recognizing a viable [NJCFA] claim under those circumstances would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed." *Id.* at *62-63.  Mangle's refusal to submit his car for diagnosis shows even he did not believe he had a valid warranty claim.  He has not plausibly alleged a warranty repair was denied.

## III.   PLAINTIFFS CONCEDE SOME OF THEIR CLAIMS LACK MERIT.

*First*, plaintiffs' <u>*negligence claims fail*</u> (MTD 23), which is why "Plaintiffs have chosen not to pursue the negligence claims alleged." Opp. 2 n.2.

*Second*, "Plaintiffs will only pursue the California statutory claims (Counts IV [UCL], v. [express warranty under Song Beverly], VI [implied warranty under Song Beverly]) on behalf of the California Subclass." Opp. 9 n.10. This was necessary since Song Beverly does not apply to sales outside California. MTD 11:11-15.

*Third*, plaintiffs concede that an entity that did not issue a warranty cannot be sued for breach of warranty. Opp. 11 n.12 ("Plaintiffs concede that Defendant AHM is the sole party responsible for the warranty."). This admits HNA is not a proper defendant for any warranty claim and all warranty claims against HNA should be dismissed.

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28

8

8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

*Fourth*, plaintiffs have not pled a warranty by representation. Opp. 13 n.16.

*Fifth*, despite alleging 30-plus references to "misrepresentations" (e.g., FAC ¶266 "affirmatively, and actively misrepresents"), plaintiffs claim that Honda "misapprehend[ed]" the nature of their claims because their "consumer protection claims … are not premised on affirmative misrepresentations…." Opp. 18:27-19:1. Honda was forced to brief this issue (MTD 13-15, 18-19) after a meet and confer. Any reference to "misrepresentations" and the like should be struck from the FAC.

## IV. PLAINTIFFS CANNOT PLEAD GENERIC WARRANTY AND UNJUST ENRICHMENT CLAIMS AS THEY MUST ALLEGE THE APPLICABLE LAW, AND THEY LACK STANDING TO ASSERT THESE NATIONWIDE CLASS CLAIMS.

Plaintiffs claim Honda has "sufficient notice of which state's laws are at issue" because Honda argued "each Plaintiff's claims arise under the laws of the jurisdictions in which the transaction[s] took place." Opp. 9:3-7. This is not enough to avoid the black-letter rule that "failure to allege which state law governs a common law claim is grounds for dismissal…. [since] for the Court to determine whether a claim has been adequately pled, *Plaintiff must allege the applicable law*." MTD 9:6-9 (quoting *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016)).

Plaintiffs attempt to fill this hole in the FAC by citing a case with an entirely different procedural posture, *Gasser v. Kiss My Face*, LLC, No. 17-cv-01675-JSC, 2018 U.S. Dist. LEXIS 162165 (N.D. Cal. Sep. 21, 2018) (Opp. 9:10.)   In *Gasser*, the defendant argued that the common-law claims should be dismissed for failure to allege the state law. But the defendant had filed two motions to dismiss, an answer, and one motion for judgment on the pleadings by that time. The court reasoned "Defendant *only now* argues that Plaintiffs' claims of breach of warranty, unjust enrichment, and fraud are deficient for failure to identify the underlying state law. In a prior motion to dismiss, Defendant assumed these three claims were brought under California law." *Id.* at *15-16. In stark contrast, Honda raised this issue here at the first possible opportunity. Dismissal is appropriate on this basis alone.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Surveying the moving papers from their glass house, plaintiffs argue they can allege nationwide claims and seek discovery from consumers in every state despite not having named plaintiffs from every state (Opp. 9:14-10:22) and complain Honda does not have "controlling authority." (Opp. 10:13.) Of course, plaintiffs then offer no controlling authority either. Plaintiffs should not be given leave to amend to add nationwide claims under any state law and to conduct nationwide discovery. Plaintiffs' counsel added numerous plaintiffs from multiple states. The better rule is to allow the plaintiffs to seek to represent consumers from their home states.  Honda should not be forced to provide discovery in states in which no named plaintiff resides, and there is certainly no rule or case requiring nationwide discovery in class actions. The Ninth Circuit has ruled that under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 594 (9th Cir. 2012). Nationwide class claims thus present threshold standing issues that should be addressed at the pleading stage. *Johnson v. Nissan N. Am., Inc*., 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017).  This threshold standing inquiry here raises the same concern "that plaintiffs present named class representatives who possess individual standing to assert each state law's claims against [Honda]." *Id.* Thus, as in *Johnson*, plaintiffs have no standing to maintain a nationwide claim under the law of their home states.  *Id.*  at 1176.

## V. PLAINTIFFS HAVE NOT PLED AN *UNREASONABLE* SAFETY ISSUE IN THEIR ATTEMPT TO MANUFACTURE AN IMPLIED WARRANTY CLAIM OR AN OMISSION-BASED CONSUMER-PROTECTION CLAIM.

Plaintiffs claim the "the Defect poses a significant safety hazard." Opp. 21:24-25. This is a novel argument because when ACs were first introduced as a luxury feature intended to increase passenger comfort.  It was not until 1969 that half of all new cars were equipped with an AC. *https://www.automobilemag.com/news/automotive-air-conditoning-history/.*   Even

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                        10                                 8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

now, AC is not a required feature, much less a safety feature. Yet plaintiffs seek to convert a potential malfunction in this comfort-feature into a safety issue because it could satisfy certain pleading requirements for their claims.  This effort ignores the reality that a plain "safety" concern does not cut it—"[t]o state a claim for failing to disclose a defect, a party must allege . . . the existence of an *unreasonable safety hazard*…" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017).  Likewise only a "*substantial* safety hazard" will render a vehicle unmerchantable to state an implied-warranty claim. *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014).   These "allegations of an unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Williams*, 851 F.3d at 1028.  Yet this is exactly all plaintiffs have pled.

The Ninth Circuit recently rejected similar allegations that claimed alleged defects in boat motors "caused severe, premature corrosion in the motor…" *Id.* at 1019. The *Williams* court noted that "[a]lthough the alleged defect manifests early in an engine's expected lifespan . . . the defect typically will not manifest until the *three-year warranty period has expired*." *Id.*   The court found little merit to plaintiffs' attempts to plead around the warranty through "safety" allegations because "the purported defect merely accelerates the normal and expected process of corrosion in outboard motors."  *Id.* at 1028.  And if the "premature but otherwise normal wear and tear [could] plausibly establish an unreasonable safety hazard, [it] would effectively open the door to claims that all of Yamaha's outboard motors eventually pose an unreasonable safety hazard." *Id.* 1028-29. Critically, in concluding plaintiffs failed to plead the existence of an unreasonable safety hazard, the court noted "the fact that the alleged defect concerns premature, but *usually post-warranty, onset of a natural condition* raises concerns about the *use of consumer fraud statutes to impermissibly extend a product's warranty period*." *Id.*

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28

11

8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

*Williams* demonstrates plaintiffs have not pled an "unreasonable" safety issue here.  Like *Williams,* the issue here manifests primarily after the three-year warranty period has expired. *See* Table 1 below. Like *Williams,* the issue is corrosion causing *premature* failures. ACs, like boats, are exposed to water/moisture. Like *Williams,* there is no allegation that any plaintiff or customer got into an accident due to their AC not working. Plaintiff Elkins admits he was still driving his vehicle "back and forth from work" during a "record heat wave" in Orange County. FAC ¶ 132. Elkins still safely drove his car.  So did the other plaintiffs.  Indeed, none of the other plaintiffs even mentioned any other "safety" concern.  At bottom, the FAC only cites a string of "'conjectural and hypothetical' injuries."

The fact the AC concern does not suddenly manifest is another critical fact.  A driver knows pretty quickly that their AC is not working.  This stands in stark contrast to *Brand* where an implied warranty claim was allowed to proceed for a sunroof that *spontaneously* opened while driving and with no warning.[2]

In short, plaintiffs have not pled an "unreasonable" safety concern to trigger an in-warranty or post-warranty duty to disclose.  The failure of an AC may be uncomfortable, but is not unsafe under any plausible allegation in the FAC.

## VI.   PLAINTIFFS DO NOT ALLEGE ANY VIABLE WARRANTY CLAIMS.

### A.   Plaintiffs' Claim that Honda's Standard Express Warranty Is Unenforceable Lacks Merit.

Plaintiffs do not have a plausible argument that Honda would not repair vehicles covered under the express warranty. Opp. 13:1-19. As demonstrated in

---

[2] In *Brand*, an accountant was driving on the freeway when, without pushing any buttons, the "sunroof spontaneously and repeatedly began opening and closing." 226 Cal. App. 4th at 1541. Although "the odd, uncontrollable movement of the sunroof was itself distracting," the accountant described how "the inrush of wind . . . caused tax returns and other documents to suddenly swirl about the cabin," forcing him to exit the freeway. After several unsuccessful attempts at controlling the unruly sunroof, the accountant "immediately returned the vehicle to the Hyundai dealership*." Id.* The court concluded that "a randomly opening and closing sunroof presented a dangerous safety flaw." *Id.* at 1550.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Table 1 below, plaintiffs have no breach of warranty claims since their vehicles were damaged while driving, in-warranty issues were otherwise covered, or their claims arose, , after the durational limits of Honda's three years or 36,000 miles warranty expired. The implied warranty claims fail for the same reasons since the maximum implied warranty period mirrors the limit for express warranties. MTD 17:4-17.

TABLE 1 - NO BREACH OF WARRANTY FOR ANY PLAINTIFF

| Plaintiff | Warranty | Vehicle/Warranty Status at Time of Request to Repair | FAC |
|---|---|---|---|
| Elkins | new car | road debris damage | ¶¶ 17, 134 |
| De Fontbrune | new car | vehicle over 3 years old | ¶¶ 18, 144 |
| Fu | new car | vehicle over 3 years old | ¶¶ 19, 157 |
| Fairchild | new car | first fail – repair covered under warranty; second fail - vehicle over 3 years old | ¶¶ 20, 179-81 |
| Mangle | new car | did not take car in for repair attempt (no allegation about lack of damage to car) | ¶¶ 21, 194-95; Opp. 13 |
| Munoz | new car, extended warranty | first fail - car over 36K miles but some extended warranty coverage; second fail - over 36K miles, potential road debris damage | ¶¶ 22, 202-05 |
| Hu | new car | Failure occurred when vehicle was 3 years old (no allegations otherwise) | ¶¶ 23, 210-13 |
| Kapetenakis | used, CPO | vehicle was damaged | ¶¶24, 217-18,Opp.Ex.A |
| Farley | used | vehicle over 3 years old and over 62K miles | ¶¶ 25, 223 |
| Beck | new | vehicle over 36K miles | ¶¶ 26, 232 |

Plaintiffs know their claims are barred, which is why they claim Honda's warranty is somehow invalid.  This invalidity argument is easily dispensed.

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28

13

8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

1          1.      Honda's Limited Warranty is Not Unconscionable.

Plaintiffs claim the express and implied warranty durational limits are unconscionable.   Opp. 14:1-4, 16:1-5; FAC ¶¶ 277, 296.   But unconscionability requires both a procedural and a substantive element.   *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 911 (N.D. Cal., Mar. 5, 2018).   The procedural element asks if there was unequal bargaining power that resulted in oppression or surprise.   *Id.*   The substantive element asks if enforcement would be "overly harsh" or "one-sided."   *Id.*   Plaintiffs' throw-in unconscionability claim is routinely dismissed at the pleading stage. *See Resnick v. Hyundai Motor Am., Inc.*, 2016 U.S. Dist. LEXIS 160179, *27 (C.D. Cal., Nov. 14, 2016); *In re GM*, 2019 U.S. Dist. LEXIS 151142, at *16-17 (same).   The same result is justified here.

Plaintiffs allege the procedural element is met because "Honda had unequal bargaining power and Plaintiffs and Class members had no other options."  Opp. 14. But the auto industry is highly competitive.  Plaintiffs who did not like the terms of Honda's warranty were free to buy another car, often at a dealership located next door to the Honda dealership.  For this reason, "the clear weight of authority" has rejected the argument that a vehicle "warranty [is] procedurally unconscionable because [consumers] had no meaningful choice in determining the time limits [of the warranty]." *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013) (dismissing breach of express warranty claim and rejecting argument that warranty was procedurally unconscionable).[3]  Further, as

---

[3] *See also Rivera v. Ford Motor Co.*, 2017 WL 3485815, *4 (E.D. Mich. Aug. 15, 2017). (rejecting argument that durational limits in automobile warranty were unconscionable and noting that "such limitations are ... routinely enforced by the courts"); *Alban v. BMW N. Am.*, 2011 WL 900114, *9 (D.N.J. Mar. 15, 2011) (rejecting argument that warranty was unconscionable, and holding that plaintiff's "bare-bones allegations that he had 'no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed between him and BMW' ... are no more than conclusions [that] are not entitled to the assumption of truth").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                                14                          8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

1    plaintiff Munoz has shown, any person who is unhappy with the warranty time and

2    mileage limits has the option to buy an extended warranty, just like plaintiff Munoz

3    did. FAC ¶ 204.

4        Plaintiffs have also failed to plausibly allege the warranties' durational limits

5    are substantively unconscionable. Plaintiffs argue the limits are substantively

6    unconscionable because "Honda knew of the defect and did not disclose it."  Opp.

7    14. But "[c]ourts have routinely rejected express warranty claims premised on [this

8    precise] theory." *Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507, at *7

9    (E.D.N.Y. Sept. 25, 2015) ("The case law is clear [] that a defendant's knowledge of

10   a latent defect does not render unconscionable a limitation contained in an express

11   warranty.").[4]

12           2.    The Express Warranty Does Not Fail Its Essential Purpose.

13       Plaintiffs claim the express warranty failed its essential purpose.  Opp. 15.

14   "[A] repair or replace remedy fails of its essential purpose only if repeated repair

15   attempts are unsuccessful within a reasonable time." *Philippine Nat'l Oil Co. v.*

16   *Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984).  These allegations are lacking

17   here. Opp. 14:7-15. Some plaintiffs allege Honda refused to repair their ACs when

18   the repairs were not *covered* under the express warranty. *See* MTD 12-13.  Others

19   allege they took their cars in for service, agreed to have their AC's fixed, and the

20   AC worked again.  FAC ¶¶ 139, 153, 170-71, 175, 179-81, 205.  Some plaintiffs

21   allege they cannot be sure if the repair fixed their AC but have not alleged their AC

22   continued to blow hot air after being repaired.  FAC ¶¶ 139, 212, 219, 227, 234.

23   Plaintiffs' concern that repairs will not "permanently restore functionality" is

24   _____

25   [4] *See also Majdipour*, 2013 WL 5574626, *20 (explaining that allegations that an
     automobile manufacturer "knew that [a d]efect might manifest after the express

26   warranty term do[es] not implicate the consciability of that term."); *Alban*, 2011
     2011 WL 900114, *9 (Plaintiffs' "allegations that BMW knew that the sound

27   insulation in his vehicle would fail after the expiration of his warranty agreement do
     not indicate that the time or mileage limitation clause was unconscionable.").

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

irrelevant because the warranty is, by its express terms, a limited warranty—not a lifetime guarantee.  FAC ¶¶ 139, 153, 175, 189; FAC, Ex. A.  In short, plaintiffs have failed to allege facts showing that each had "repeated repair attempts" when *in-warranty* but none of these repairs were successful. *Philippine Nat'l Oil Co.*, 724 F.2d at 808.  The repairs worked, and now there is an extended warranty which eliminates future repair cost concerns, *if* they arise.

## B.   The NVLW Does Not Apply to Design Defects.

Plaintiffs claim they alleged "both design and manufacturing defects. Opp. 11:16. This ignores their claims of alleged "systemic" defects.  Opp. 12.  But even the cases plaintiffs cite confirm a manufacturing defect is pled if "vehicles differ from the product the manufacturer intended to sell." *Johnson*, 272 F. Supp. 3d at 1177.  This is not the case here since plaintiffs' begin with the premise that Honda "design[ed] and manufactur[ed]" "insufficiently strong and durable AC System components" and was "aware [of the defect] since prior to placing Class Vehicles into the stream of commerce."  FAC ¶¶ 47-48, 55.  These allegations of pre-production design and material choices cannot be reconciled with a standard that requires a showing of products that "differ[ed] from the product [Honda] intended to sell."  *Johnson*, 272 F. Supp. 3d at 1177.  A few "offhand references to manufacturing defects" does not morph a design defect allegation into a covered manufacturing defect claim. *State v. Chrysler Group*, 2015 U.S. Dist LEXIS 21022, *12-13 (C.D. Cal., Feb. 20, 2015).[5]

/ / /

/ / /

---

[5] If the Court finds that Plaintiffs have alleged a manufacturing defect, this dooms their consumer claims for failing to disclose a defect. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) ("To state a claim for failing to disclose a defect, a party must allege '(1) the existence of a <u>*design*</u> defect…'").  Plaintiffs cannot have both an express warranty claim based on a manufacturing defect and a failure-to-disclose claim based on a design defect.  They are mutually exclusive.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiffs also claim Honda's conduct enlarged the express warranty to cover design defects. Opp. 12:15-22. This is a factually unsupported assertion. Honda repaired ACs when they were under warranty, sometimes offered goodwill discounts if a repair was not covered, and offered an extended warranty in relation to the manufacturing issue discovered in the condensers. The gravamen of the "systemic" defect plaintiffs are pushing is for a non-covered design defect.

### C. The California Plaintiffs' Express-Warranty Lemon Law Claims Fail.

Plaintiffs argue they successfully alleged Song-Beverly Act claims. Opp. 17-18. The Act imposes liability only after Honda has a reasonable number of *in-warranty* repair attempts. Liability under the Song-Beverly Act cannot be established because the California plaintiffs' vehicles were not subject to repair at least two times while *in-warranty*. *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1207 (2003); Cal. Civ. Code § 1793.2(d)(2). De Fontbrune only brought his vehicle in for an AC repair *after* his warranty expired. FAC ¶¶ 18, 144-145. Elkins brought his vehicle in once in warranty but the dealer found no AC issues. FAC ¶¶ 128-129. His next repair was for road debris damage not covered under warranty. FAC ¶¶133-34. These plaintiffs' lemon law claims require dismissal with prejudice.

### D. Plaintiffs Lack Privity With Honda Which Bars Their Common Law Implied Warranty Claims.

Plaintiffs argue they do not need to meet the privity requirement or they qualify for an exception. Opp. 17. Plaintiffs' implied-warranty claims require privity. Plaintiffs do not cite any cases challenging California's requirement and admit they purchased cars from third-party dealers. FAC ¶¶ 17-26. Privity is still required for most common law implied warranty claims. Plaintiffs' reliance on an outdated Florida case that purportedly holds otherwise does not help them.[6]

---

[6] Opp. 17, n.23 (citing *Manheim v. Ford Motor Company*, 201 So.2d 440, 441 (Fla. 1967)). Florida cases since *Mannheim* have required privity. *See*, e.g., *Ashley* (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Plaintiffs' reliance on a claimed "third party beneficiary" exception also fails.

2    Opp. 17.   This is a summary allegation devoid of factual support.   Plaintiffs

3    summarily claim they are "intended third-party beneficiaries of contracts between

4    Honda and its dealers" (FAC ¶ 297), but do not provide "specific allegations

5    identifying or describing the agreements under which Plaintiffs claim third party

6    beneficiary status." *Kirsopp v. Yamaha Motor Co*., 2015 U.S. Dist. LEXIS 68639,

7    *19 (C.D. Cal., Jan. 7, 2015).

8    Further, it is questionable whether this exception, even if properly pled, is

9    viable after *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017 (9th Cir. 2008).   *See*

10   *Kirsopp*, 2015 U.S. Dist. LEXIS 68639, at *16-20 (questioning (without deciding)

11   whether the "third-party-beneficiary exception necessarily remains viable in

12   California following *Clemens*"); *Long v. Graco Children's Prods., Inc*., 2013 U.S.

13   Dist. LEXIS 121227, *47-48 (N.D. Cal., Aug. 26, 2013) (did not recognize the

14   third-party beneficiary exception because *Clemens* is binding authority.).   As

15   *Clemens* notes, "particularized exceptions to the [vertical privity] rule exist," and

16   "California courts have painstakingly established the scope of the privity

17   requirement."   *Clemens*, 534 F.3d at 1023-24. Some other states at issue have also

18   rejected third-party beneficiary claims.[7]

19   Plaintiffs' reliance on *In re MyFord Touch*, 46 F. Supp. 3d 936 (N.D. Cal.

20   2014) is misplaced.   While *Clemens* notes a privity requirements may be relaxed

21   where customers relied on written labels or advertisements by the manufacturer, the

22   underlying authority in *Clemens*, *Burr v. Sherwin Williams Co*., 42 Cal. 2d 682

23   (1954), made clear this advertisement "exception, where representations are made

24

25   *Square, Ltd. v. Contractors Supply Orlando, Inc*., 532 So. 2d 710, 711 n.1 (Fla. Dist.
     Ct. App. 1988).   New York requires privity. *Miller v. Gen. Motors Corp*., 99 A.D.2d

26   454, 471 N.Y.S. 2d 280, 282 (N.Y. App. Div. 1st Dept. 1984).

27   [7]   *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 310 (N.D.N.Y. Aug. 1,
     2019); *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc*., 2012 WL

28   924380, at *21-22 (D.N.J. Mar. 19, 2012).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                    18                              8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

by means of labels or advertisements, is applicable only to express warranties." *Id*. at 696.   Plus, plaintiffs admit they are not seeking to rely on "labels or advertisements." (Opp. 18:27-19:1). So this exception would not apply anyway.

### E.   Plaintiffs' Magnuson-Moss Act Claim Should Be Dismissed.

Plaintiffs argue they have pled a Magnuson-Moss Warranty Act claim.  Opp. 18.  The Magnuson-Moss act requires 100-named plaintiffs for a cognizable class claim.  *Pilgrim v. Gm Co.*, 2019 U.S. Dist. LEXIS 194406, *16-17 (C.D. Cal., Oct. 4, 2019); *Cadena v. Am. Honda Co.*, 2019 U.S. Dist. LEXIS 117584, *33-34 (C.D. Cal., May 29, 2019); *Macdougall v. Am. Honda Motor Co, Inc.*, 2017 U.S. Dist. Lexis 221537, *12 (C.D. Cal. Dec. 4, 2017).  It is undisputed plaintiffs have not met this requirement.  Further, plaintiffs have failed to plead viable state law warranty claims, so their Mag-Moss claim must be dismissed.  *Clemens*, 534 F.3d at 1022.

## II.   PLAINTIFFS' OMISSION-BASED CONSUMER-PROTECTION CLAIMS FAIL BECAUSE THERE WAS NO DUTY TO DISCLOSE.

Plaintiffs make clear they are pressing a pure omission claim based on Honda's purported "failure to disclose—and active concealment of—the Defect." Opp. 19:1-2. These claims fail because (1) there is no issue requiring disclosure; (2) Honda did make a disclosure once it determined the issue, (3) Honda had no knowledge to make a disclosure about the condenser before plaintiffs purchased in 2016, and (4) Honda did not "actively" conceal anything.

### A.   While a Safety Issue Is Not Always Required to Trigger a Disclosure Obligation, Plaintiffs Claims Still Fail Because the Condenser Issue Does Not Go to a Vehicle's *Central* Function.

"To state a claim for failing to disclose a defect, a party must allege … the existence of an unreasonable safety hazard…" *Williams*, 851 F.3d at 1025. As explained above, plaintiffs have not and cannot make that showing.  Even if the rule does not require plaintiffs to plead an unreasonable safety issue if the alleged defect goes to the "*central* functionality of the product" *that arises within the warranty period*, *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018), plaintiffs have not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                    19                              8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

made that showing either.  *See* Opp. 20-21.  Plaintiffs state the conclusion that an "AC System is central to the day-to-day functioning of the Class Vehicles." Opp. 20 n.26. Plaintiffs ignore the fact that the defect must manifest within the warty period. They also ignore that a defect that goes to the "central functionality" is one that "renders those products *incapable of use by any consumer* …." *Hodsdon*, 891 F.3d at 864. For example, the defect might meet this central-functionality test where a laptop computer defect would "cause the screens to dim and darken during the warranty period." *Id.* at 863 (citing *Rutledge v. HP*, 238 Cal. App. 4th 1164 (2015)).

Likewise, in *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011), computer purchasers complained about a defect that manifested during the warranty period and caused critical data corruption of the hard drive. *Id.* at 253-254. "This was not a situation where the microchip was complete and operational when sold but wore out or broke down over time because of use and wear and tear." *Id.* at 254. The court held that the plaintiffs had stated a duty-to-disclose claim in part because the defect "was *central to the function of a computer as a computer*." *Id.* at 258. *Collins* at most "stands for the premise that a manufacturer has a duty to disclose only physical defects…that relate to a product's central function and *arise during the warranty period*." *Hodsdon*, 891 F.3d at 862.[8]

Here, all consumers are *capable* of driving vehicles without an AC, as AC does not affect the central function of a vehicle to provide transportation from point A to B. Notably, *Rutledge* and *Collins* dealt with issues going to the central-

---

[8]  Honda's motion applies to all plaintiffs' consumer claims, including non-California statutes. Plaintiffs attempt to argue that there is a generic duty to disclose any non-safety issue in other states. Opp. 21:10-20. But plaintiffs do not cite any cases that support them and instead their cases at most support a safety-based duty to disclose. *See Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1303 (S.D. Fla. 2017) (AK-47 rifles that accidentally fire); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 537-38 (D. Md. 2011) (vehicle defect that resulted in a total loss of power on the highways); *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 117 (E.D.N.Y. 2011) (oven exploded, caught fire, and seriously burned consumer).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                      20                        8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

functioning that arise *within the warranty* period. The condenser issue relates to corrosion, which by definition takes time. The AC issues manifested post-warranty as plaintiffs' facts and the warranty extension make clear. *See* Table 1, above. There is no duty to disclose that a product will fail post warranty absent a safety issue. *See, e.g., Wilson v. HP*, 668 F.3d 1136, 1142-43 (9th Cir. 2012).

## B. Honda Had No Knowledge of Defect When Plaintiffs Acquired Their Cars.

The Opposition only offers a generic analysis of knowledge without attempting to analyze what Honda knew *at the time each of the plaintiffs' vehicle transactions took place*. Opp. 22:16-24:21. Yet this analysis is what guides whether plaintiffs have pled any viable consumer protection claims. *Wilson*, 668 F.3d at 1145. *Wilson* rejected the precise claim plaintiffs make in their opposition—namely, that generic, conclusory, and undated claims of knowledge that individually are insufficient somehow add up to state a viable knowledge accusation. Opp. 24:12-20. Indeed, to adequately plead knowledge, the defendant must receive or track the complaints and they must add up to an "unusually high level []" of complaints along with other plausible facts to show the company "*itself* saw this number [of complaints] as significant and beyond the norm." *Williams*, 851 F.3d at 1027 n.8 (original emphasis).

In *Williams*, 20 plaintiffs claimed there was a defect in their motors that Yamaha knew pre-sale. They alleged that "*individual* supervisors dealt with '40 or 50' consumer complaints" *each* soon after the motors went on the market. *Id.* at 1027 n.8. Yamaha created a separate consumer-response system dedicated to handling this *unusually high volume of complaints* specifically for the alleged defect. The complaints were not only made directly to the defendant, but the defendant affirmatively responded to the "unusual volume of complaints by instituting a dedicated customer care center." *Id.* The court found that Yamaha's response *to* the direct complaints showed presale knowledge. *Id.* at 1028.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Here, unlike *Williams*, plaintiffs have not shown Honda "***itself*** saw this number [of complaints] as significant and beyond the norm." Likewise, the limited complaints here are akin to those *Williams* distinguished as having an "insufficiently small number of complaints, complaints posted in forums unrelated to the defendant, complaints made after the sale dates, or some combination of these circumstances." 851 F.3d at 1027 n.8.   The following timeline shows the FAC provides just *one* third-party online complaint before six plaintiffs purchased (De Fontrbrune, Fu, Fairchild, Elkins, Hu, Mangle) and even then, the complaint related to a *2002* model year Civic[9]:

TABLE 2 - TIMELINE OF PURCHASES, COMPLAINTS, AND ANNOUNCEMENTS

| Date | Event | Cite |
|------|-------|------|
| July 21, 2015 | Online complaint – third party | FAC ¶ 89 |
| *December 2015* | *De Fontrbrune bought new 2016 Civic* | FAC ¶ 18 |
| *January 18, 2016* | *Fu bought new 2016 Civic* | FAC ¶ 19 |
| *February 6, 2016* | *Fairchild bought new 2016 Civic* | FAC ¶ 20 |
| *April 3, 2016* | *Elkins bought new 2016 Civic* | FAC ¶ 17 |
| *May 2016* | *Hu bought new 2016 Civic* | FAC ¶ 23 |
| *June 3, 2016* | *Mangle leased new 2016 Civic* | FAC ¶ 21 |
| June 12, 2016 | Online complaint– third party | FAC ¶ 98 |
| June 22, 2016 | Online complaint  – third party | FAC ¶ 89 |
| June 23, 2016 | Online complaint  – third party | FAC ¶ 89 |
| July 2016 | Tech Line Summary Article (hoses) | FAC ¶ 13 |
| July 11, 2016 | Online complaint  – third party | FAC ¶ 89 |
| July 14, 2016 | Online complaint to NHTSA | FAC ¶ 95 |
| August 5, 2016 | Online complaint  – third party | FAC ¶ 89 |
| May 24, 2017 | Online complaint  – third party | FAC ¶ 89 |
| July 6, 2017 | Online complaint – third party | FAC ¶ 89 |
| *August 2017* | *Munoz bought new 2017 Civic* | FAC ¶ 22 |
| Sept.25, 2017 | Online complaint to NHTSA | FAC ¶ 95 |

---

[9] FAC at 25:9-17 & n.19. The FAC's footnote 19 contains the web address of this third-party complaint. If you click on the username of this commenter, it states their vehicle was a 2002 Civic. *See* https://www.civicforums.com/forums/members/123478-mrohitredd.html.   This shows why plaintiffs' reliance on third-party complaints does not show knowledge.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| Date | Event | Cite |
|---|---|---|
| *Does not allege purchase date* | *Beck bought new 2017 Civic* | FAC ¶ 26 |
| *February 2018* | *Farley bought used 2016 Civic* | FAC ¶ 25 |
| March 12, 2018 | Online complaint to NHTSA | FAC ¶ 59 |
| April 30, 2018 | Online complaint – third party | FAC ¶ 89 |
| May 16, 2018 | Online complaint to NHTSA | FAC ¶ 95 |
| May 21, 2018 | Online complaint – third party | FAC ¶ 89 |
| July 6, 2018 | Online complaint to NHTSA | FAC ¶ 95 |
| July 27, 2018 | Online complaint to NHTSA | FAC ¶ 59 |
| August 17, 2018 | Online complaint – third party | FAC ¶ 70 |
| Sept. 26, 2018 | Online complaint – third party | FAC ¶ 98 |
| October 1, 2018 | Online complaint – third party | FAC ¶ 98 |
| October 18, 2018 | Online complaint to NHTSA | FAC ¶ 95 |
| Nov. 1, 2018 | Online complaint posted | FAC ¶ 98 |
| *November 2018* | *Kapetenakis bought used 2016 Civic* | FAC ¶ 24 |
| Nov. 19, 2018 | Online complaint to NHTSA | FAC ¶ 95 |
| March 26, 2019 | Online complaint to NHTSA | FAC ¶ 95 |
| April 15, 2019 | Online complaint posted | FAC ¶ 98 |
| May 13, 2019 | Online complaint to NHTSA | FAC ¶ 95 |
| May 17, 2019 | Online complaint to NHTSA | FAC ¶ 59, 95 |
| August 9, 2019 | TSB informing dealerships of warranty extension and reimbursement | FAC ¶ 14 |
| November 2019 | Letter to customer extending warranty and providing reimbursement | Supp. Ortloff Decl. Ex. 3 |

There were also only a handful of complaints when the other four plaintiffs purchased in 2017 and 2018 (Munoz, Beck, Farley, Kapetenakis). These few complaints were (1) spread out over multiple years, (2) had multifarious issues alleged with no clear pattern, (3) discussed Honda vehicles not included in the putative class, and (4) were spread across a *vehicle population of over 1.2 million vehicles* (FAC ¶ 43). This does not come close to the standard the Ninth Circuit set for viable claims of knowledge.

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiffs' claim that generic pre-release data, repair data, and replacement parts data equate to knowledge is one the Ninth Circuit has already rejected. *Wilson*, 668 F.3d at 1146-47. Likewise, plaintiffs do not meaningfully defend their red-herring theory that a 2016 "Summary Article"—relating to a "very small quantity" of low pressure hoses that were rubbing against another part—shows knowledge of a "systemic" defect. Plaintiffs bury their response in a footnote and claim this article shows a "material defect," but do not explain how this minor-hose issue relates to any of the plaintiffs' vehicles. Opp. 23 n.28.

In short, plaintiffs' knowledge allegations are a prime example of quantity over quality. Even a cursory analysis shows that plaintiffs have not plausibly alleged Honda knew of a *corrosion* issue before plaintiffs purchased in 2016.

## C.    Plaintiffs Have Not Alleged Active Concealment.

Plaintiffs have clarified they are seeking to invoke a duty to disclose based on "active concealment" (and are not suing based on any "misrepresentations"). Opp. 18:27-19:2. Even in a 100-page pleading, plaintiffs have not alleged with particularity any "affirmative act" showing Honda suppressed information as required under Rule 9(b). Active concealment requires an *affirmative act* such as "hiding, concealing or covering up" the alleged defect. *Punian v. Gillette Co.*, 2016 U.S. Dist. LEXIS 34164, *51 (N.D. Cal., Mar. 15, 2016); *Herremans v. BMW of N. Am.*, 2014 U.S. Dist. LEXIS 145957, *15 (C.D. Cal., Oct. 3, 2014). Nondisclosure does not equal *active* concealment. *Id.* Plaintiffs generically allege that Honda (1) denied a defect existed even when directly asked and (2) repaired the defect with equally defective parts. FAC ¶¶ 122, 125, 419, 430. Plaintiffs do not allege these purported communications where Honda denied the existence of an AC problem. ¶¶ 126-237. Rather, plaintiffs allege Honda was "aware [the ACs] were failing at an abnormal rate," the dealerships had "experience" with the problem, and a warranty extension was implemented. FAC ¶¶ 146, 172-73, 194. None of this shows Honda engaged in any affirmative acts to actively conceal. The fact that Honda disclosed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                                      24                         8:19-CV-00818 JLS (KESx)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

the condenser issue and offered reimbursement negates this throw-in allegation.

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS FOR ALL THE REASONS ALREADY MENTIONED AND BECAUSE THERE IS ALREADY A CONTRACT.

Plaintiffs' unjust enrichment analysis ignores the fact that this claim fails when a contract defines the rights of the parties. Opp. 24:22-25:27. A claim for unjust enrichment "is an action in quasi-contract, which *does not lie when an enforceable, binding agreement exists* defining the rights of the parties." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Plaintiffs' problem is there is indisputably a binding express warranty contract between them as Honda has shown above. The only way plaintiffs could plead a quasi-contract claim is if the express warranty was somehow void, unenforceable, ineffective, rescinded, or procured by fraud. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).  But the express warranty is a valid contract that governs the subject matter of this claim. *Paracor*, 96 F.3d at 1167.  Because the express warranty is enforceable, plaintiffs have not pled a quasi-contract claim. *Id.*; *see also  Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380, 383-84 (9th Cir. 2018) (noting "[u]njust enrichment is a quasi-contract claim, which is not available when a contract defines the rights of the parties," and dismissing claim that a bank was unjustly enriched when consumers "overpaid for fees that were expressly governed by the terms  of a contract" because "[t]his dispute is inherently contractual").

## IV.   CONCLUSION

Plaintiffs' claims must be dismissed now before any more time is wasted.

DATED: December 13, 2019          LEWIS BRISBOIS BISGAARD & SMITH LLP

                                By:      /s/ Eric Y. Kizirian
                                         Eric Y. Kizirian
                                         Attorneys for American Honda Motor Co.,
                                         Inc. & Honda North America, Inc.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4823-4117-4702.28                          25                          8:19-CV-00818 JLS (KESx)
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT